UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY L. WALKER,

       Plaintiff,                             Civil Action No. 14-11137
                                                 Honorable George Caram Steeh
v.                                                 Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [18, 20]**

       Plaintiff Kimberly Walker ("Walker") commenced this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties filed motions for summary judgment, which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

       For the reasons set forth below, the Court finds that the Administrative Law Judge ("ALJ") erred by failing to sufficiently explain why he declined to give controlling weight to a treating source opinion that precluded Walker from performing sedentary work. Accordingly, the Court recommends that Walker's motion for summary judgment [18] be GRANTED, the Commissioner's motion for summary judgment [20] be DENIED and, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be REMANDED for further consideration

consistent with this Report and Recommendation.

## II.     REPORT

### A.     Procedural History

On September 9, 2011, Walker filed the instant applications for DIB and SSI, alleging a disability onset date of November 30, 2010. (Tr. 15). The claims were initially denied on October 6, 2011. (*Id.*). Thereafter, Walker filed a timely request for an administrative hearing, which was held on July 3, 2012 before ALJ Patrick J. MacLean. (Tr. 29-70). Walker, who was represented by non-attorney Dannelly Smith, testified at the hearing, as did vocational expert Lois P. Brooks. (*Id.*). In a written decision dated September 26, 2012, the ALJ determined that Walker is not disabled. (Tr. 15-23). On January 10, 2014, the Appeals Council denied review. (Tr. 1-5). Walker filed for judicial review of the final decision on March 17, 2014. (Doc. #1).[1]

### B.     Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

---

[1] In a recent motion filed with this Court, Walker advises that she was "found disabled on a subsequent claim for disability benefits beginning in January 2014. Accordingly, [she] only seeks review of the denial of benefits from November 30, 2010 through January 1, 2014." (Doc. #21 at ¶ 3).

2

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240, at *21 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . [i]f the analysis [then] reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

    **C.**     **Background**

        *1.*     *Disability Reports*

In an undated disability report, Walker indicated that she suffers from carpal tunnel syndrome, fibromyalgia, and osteoarthritis. (Tr. 169). Walker reported that she stopped working on November 20, 2010, as a result of these conditions. (*Id.*). With respect to her education level, Walker completed the ninth grade but never pursued any further studies. (Tr. 170). Prior to

stopping work, Walker was employed as a dishwasher, security guard, and transport driver for a counseling center. (*Id.*). Walker stated that several doctors had treated her for the foregoing physical impairments. (Tr. 172-173). At the time of the report, Walker was taking multiple pain medications and Lisinopril and Zocor for high blood pressure. (Tr. 172).

In a function report dated September 21, 2011, Walker stated that she lives in an apartment with her son. (Tr. 176). When asked to describe her daily activities, Walker indicated that she irons her son's clothes, bathes, lies down, sleeps, prepares food, watches television, and visits her mother. (Tr. 177). When asked to describe what she could do before the onset of her conditions that she can no longer do, Walker reported that she could no longer work and perform different activities. (*Id.*). Her conditions also interfere with her sleep and she sometimes awakens with pain. (*Id.*). Walker is able to take care of her hair although she stated that her right hand "gives out at times." (*Id.*). She is able to use the toilet with difficulty because her knee hurts when she is in the sitting position. (*Id.*). As noted above, Walker can bathe herself but she has a "hard time getting in and out of the tub." (*Id.*). Walker indicated that she spends two to three hours preparing meals three times a week. (Tr. 178). When she does cook, Walker generally makes sandwiches, frozen dinners, chicken, vegetables or fish. (*Id.*). Walker goes outside once a day and shops every other week for grocery items. (Tr. 179-180). Walker reported that she is able to pay bills and use a checkbook, but cannot handle a savings account. (*Id.*). Her hobbies are watching television, taking her son skating and going to church. (Tr. 180). However, Walker indicated that she suffers body stiffness while watching television and back pain when she sits in church for extended periods of time. (*Id.*).

When asked to identify functions impacted by her condition, Walker checked lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing, seeing, memory,

4

concentration, and using her hands. (Tr. 181). She cannot walk around the block without resting afterwards for 10 minutes. (*Id.*). Since 2010, Walker reported that she has worn a knee brace around the house only when she experiences pain. (*Id.*).

        2.     *Walker's Testimony*

At the time of the July 3, 2012 hearing before the ALJ, Walker was living in a second floor apartment with her son. (Tr. 36, 38). She testified that on average she goes up and down the staircase in her apartment three times a day. (Tr. 38). Since her left knee "does not bend well" she must hold onto the bannister going down the stairs. (Tr. 61-62). Although Walker indicated that she must frequently lie down on account of her fibromyalgia, she is able to cook light meals, such as pasta and salads, and perform light household cleaning. (Tr. 39-40). Otherwise, her son assists her with taking out the garbage, cooking, vacuuming, laundry, and grocery shopping. (Tr. 40-41). Walker stated that she stopped working as a driver for a counseling center because of her fibromyalgia and knee pain. (Tr. 43). As a result, she underwent knee surgeries in May 2010 and November 2011, but she still suffers frequent pain. (Tr. 44, 55). Walker also received an EMG of her right hand in June 2012, which was "borderline positive" according to her non-attorney representative. (Tr. 44-45). She reported that she takes pain medication that causes occasional nausea and that she has trouble sleeping when she is in pain. (Tr. 46, 48). On days when she is not experiencing significant pain, Walker is able to take care of her personal needs, such as bathing or dressing. (Tr. 48). Walker attested that she can sit or stand for about 10 to 15 minutes at a time and walk one block before either changing positions or taking a break. (Tr. 49-50). She also uses a soft knee brace approximately twice a month. (Tr. 51-52). Walker estimated that she can lift approximately five to 10 pounds without serious discomfort and that she can pick up coins and other small items from a table with no

5

difficulty. (Tr. 53). However, Walker reported that her hands hurt when they become swollen and that her right hand is particularly troublesome. (*Id.*).

With respect to past work, Walker stated that she stopped working as a driver for a counseling center sometime between 2009 and 2010. (Tr. 56). Thereafter, she worked as a babysitter from anywhere between one to three days a week for four to five hours a day. (Tr. 57). Walker reported that she stopped babysitting in 2011 because she "can't do it anymore." (Tr. 58).

### 3. *Medical Evidence*

The Court has thoroughly reviewed the record, and will discuss the relevant medical evidence within the analysis portion of this Report and Recommendation.

### 4. *Vocational Expert's Testimony*

Lois Brooks testified as an independent vocational expert ("VE"). (Tr. 62-67). The ALJ asked the VE several hypotheticals, which were progressively more restrictive. (Tr. 64-67). At first, the ALJ asked the VE to imagine a claimant of Walker's age, education, and work experience, who was limited to light work; alternatively sitting or standing at will every 15 minutes, so long as she would not be off task more than 10 percent of the workday; capable of lifting no more than 20 pounds occasionally and 10 pounds frequently; occasionally climbing ramps or stairs, stooping, crouching, kneeling, and crawling; occasionally handling and fingering objects with her right (dominant) hand; and unable to climb ladders, ropes, or scaffolds. (Tr. 64). The VE testified that the hypothetical individual would be capable of working in the positions of babysitter (as Walker performed it, not consistent with the DOT); greeter (154,000 jobs nationwide); and information clerk (140,000 jobs nationwide). (Tr. 65). Then the ALJ added the following restrictions: lifting up to 10 pounds occasionally; standing or walking for approximately two hours per eight-hour workday; and sitting for approximately six hours per

eight-hour workday with normal breaks. (*Id.*). The VE testified that the hypothetical individual would not be able to perform any of Walker's past relevant work as she performed it or as such jobs are customarily performed. (*Id.*). However, the hypothetical individual would be capable of surveillance system monitoring (35,000 jobs nationwide), in addition to the field of visual inspector (70,000 jobs nationwide). (Tr. 66). The VE further testified that if the hypothetical individual would be off task more than 20 percent of an eight-hour workday, there would be no jobs in the national economy that such an individual could perform, including Walker's past relevant work. (*Id.*).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Walker is not disabled under the Act. At Step One, the ALJ found that Walker engaged in substantial gainful activity from the alleged onset date until September 1, 2011, as she testified that she worked as a babysitter during this time (earning approximately $1,000 per month), but that she had not engaged in substantial gainful activity since September 1, 2011. (Tr. 17). At Step Two, the ALJ found that Walker has the severe impairments of "degenerative changes at L5 status post-bilateral steroid injection [sic] and hip articulations," "borderline" bilateral carpal tunnel syndrome, osteoarthritis of the right index finger, and bilateral planter fasciitis. (*Id.*). At Step Three, the ALJ found that Walker's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 18). The ALJ then assessed Walker's residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work with the following limitations: "the claimant requires a sit/stand, at will, option. The claimant cannot climb ladders, ropes or scaffolds. The claimant can only occasionally climb ramps or stairs, balance, stoop, crouch, kneel and crawl. The claimant can perform occasional

handling (gross manipulation) and fingering with her right (dominant) hand." (*Id.*).

At Step Four, the ALJ determined that Walker is unable to perform any past relevant work as a chauffeur, short order clerk, or babysitter. (Tr. 21). At Step Five, based in part on the VE's testimony, the ALJ concluded that Walker is capable of performing a significant number of jobs that exist in the national economy. (Tr. 21-22). As a result, the ALJ concluded that Walker is not disabled under the Act. (Tr. 22).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility

of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (stating that "an ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.     Analysis**

Walker argues, among other things, that the ALJ did not properly explain why he declined to afford controlling weight to her treating rheumatologist.[2] (Doc. # 18 at 11-12). The Court agrees.

Social Security regulations require ALJs to give treating source opinions controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic

---

[2] Due to the proposed disposition of this case, the Court need not address Walker's remaining contentions that the ALJ: (1) failed to give appropriate weight to the opinions of her other treating physicians; and (2) improperly determined that her testimony was not fully credible in view of the objective medical evidence.

9

techniques and [are] not inconsistent with the other substantial evidence in [the] case record." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal quotations omitted). While treating source opinions are entitled to controlling weight under these circumstances, it is "error to give an opinion controlling weight simply because it is the opinion of a treating source" – such weight is only appropriate if the opinion is well-supported and consistent with the record as a whole. Social Security Ruling 96-2p, 1996 SSR LEXIS 9, at *5 (July 2, 1996); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (stating that "[t]reating physicians' opinions are only given such deference when supported by objective medical evidence.").

If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, "considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); *see also* 20 C.F.R. §416.927(c)(2) (requiring the ALJ to provide "good reasons" for weight given to treating source opinion).

In this case, Walker's rheumatologist, Inocencio Cuesta, M.D., performed an RFC assessment dated June 28, 2012. (Tr. 271-274). Therein, Dr. Cuesta diagnosed Walker with fibromyalgia and carpal tunnel syndrome in her right hand. (Tr. 271). The doctor found that Walker could walk one to two city blocks without rest or severe pain; sit for two hours and 45 minutes at one time; stand for one hour and 45 minutes at one time; and stand/walk for less than two hours and sit for approximately four hours in an eight-hour workday. (Tr. 272-273). Dr.

Cuesta also opined that Walker did not require a job that permits an at will sit/stand option and that she could frequently lift objects less than 10 pounds and occasionally lift 10 pounds. (Tr. 273). With respect to flexibility and mobility, Walker could occasionally look down/up; turn her head in either direction; hold her head in static position; twist and crouch/squat. (Tr. 273-274). She could frequently stoop, but rarely climb ladders and stairs. (Tr. 274). Dr. Cuesta checked the line indicating that Walker's impairments had not lasted, nor could be expected to last, more than 12 months.[3] (Tr. 271). Immediately below that line, Dr. Cuesta checked the line indicating that Walker was not a malingerer. (*Id.*). He also found that Walker would likely be absent one day per month on account of her impairments. (Tr. 274).

Relying on this assessment, the ALJ concluded that Walker could "perform work at essentially a sedentary exertional level at a total of 6 hours a day," and that her fibromyalgia condition was "not 'expected to last twelve months.'" (Tr. 20). The ALJ then accorded "appropriate weight" to the doctor's opinion on the ground that, "[e]ven if the claimant was limited to 6 hours of sedentary work at the time [Dr. Cuesta] prepare[d] his statement, even [he] admit[s] that the claimant's fibromyalgia had not lasted, nor was expected to last more than 12 months." (*Id.*). The problem with this analysis, however, is that the ALJ's duration of impairment finding is belied by the record.

Although the ALJ accurately summarized Dr. Cuesta's assessment that Walker's

---

[3] Just a few months later, on November 27, 2012, Dr. Cuesta completed a second RFC assessment that post-dated the ALJ's September 2012 decision. (Tr. 8-11). In this later assessment, Dr. Cuesta revised his earlier notation and indicated that Walker's fibromyalgia condition had lasted, or was expected to last, more than 12 months. (Tr. 8). Nonetheless, since the Appeals Council denied review after having considered the second RFC assessment, such evidence cannot be considered for purposes of this case. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993) (stating that where the Appeals Council denies review of the ALJ's decision, evidence first submitted to the Appeals Council cannot provide a basis for deeming the ALJ's decision unsupported by substantial evidence).

fibromyalgia had not lasted more than 12 months, the doctor's own treatment notes indicate that he had, in fact, already been treating this condition since June 2, 2011, more than a full year before the June 28, 2012 RFC assessment. (Tr. 210-211). This discrepancy, particularly in light of the juxtaposition of Dr. Cuesta's notation that Walker was not malingering, and other medical evidence in the record supporting the conclusion that Walker was diagnosed with these conditions consistently for more than twelve months,[4] calls into question Dr. Cuesta's durational "check mark." The ALJ's failure to mention, let alone reconcile, this discrepancy, leaves a serious void in his decision to *discount* Dr. Cuesta's medical opinion that Walker could only stand/walk for less than two hours and sit for approximately four hours in an eight-hour workday, a finding that is otherwise "inconsistent with the demands of sedentary work," which the ALJ found her capable of performing. *Tate v. Comm'r of Soc. Sec.*, No. 10-14107, 2011 U.S. Dist. LEXIS 143921, at *23 (E.D. Mich. Nov. 18, 2011) (holding that ALJ misconstrued treating physician opinion as supporting sedentary work where doctor indicated that claimant could stand/walk for less than two hours and sit for less than six hours in an eight-hour workday); *see also Zaft v. Comm'r of Soc. Sec.*, No. 12-13415, 2013 U.S. Dist. LEXIS 136608, at *27-31 (E.D. Mich. Aug. 19, 2013) (holding that ALJ failed to adequately address why treating physician's opinion that plaintiff could only stand/walk for less than two hours and sit for approximately two

---

[4] For example, on July 18, 2011, Dr. Cuesta found "Trigger points consistent with fibromyalgia," increased her Cymbalta prescription, and ordered x-rays of her lumbar spine. (Tr. 209). Those x-rays, in turn, showed degenerative changes, including sclerosis of bilateral facet articulations at L4-L5 and L5-S1, mild sclerosis of the sacroiliac joints, and mild narrowing of the bilateral hip articulation. (Tr. 223). In September 2011, it was noted that Walker had fibromyalgia and inflammatory arthritis. (Tr. 235). Also in September 2011, Dr. Jerome Sitner provided limitations due to her osteoarthritis and fibromyalgia, including that she could stand/walk less than 2 hours. (Tr. 237). In January 2012, Dr. Cuesta made findings similar to his prior ones. (Tr. 255). On June 25, 2012, Dr. Vishal Nemarugommula wrote that Walker had severe arthritis and back pain and was unable to stand for more than 15 minutes, could not stand for a bus and had a disability that was "not temporary," which he indicated would last "for at least 6 months." (Tr. 277).

hours in an eight-hour workday should not be given controlling weight); Social Security Ruling 96-9p, 1996 SSR LEXIS 6 at *17-18 (providing that the unskilled sedentary occupational base will be eroded in the event "an individual is unable to sit for a total of 6 hours in an 8-hour work day"). For this reason, the Court finds that the ALJ failed to sufficiently explain why Dr. Cuesta's opinion as to Walker's limitations should not be given controlling weight pursuant to 20 C.F.R. § 404.1527(d)(2).

The matter should, therefore, be remanded so that the ALJ may determine the proper level of deference to be afforded Dr. Cuesta's medical opinion in light of the objective medical evidence and other appropriate considerations, and provide an adequate explanation for his decision.[5]

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that Walker's motion for summary judgment [18] be GRANTED, the Commissioner's motion for summary judgment [20] be DENIED, and the Commissioner's decision be REMANDED for further consideration consistent with this Report and Recommendation.

Dated: December 31, 2014　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[5] The Court notes that the ALJ's omission of the fibromyalgia condition from his list of Step Two severe impairments may have stemmed from the same unrecognized discrepancy that led him to discount Dr. Cuesta's medical opinion without adequate explanation. While the ALJ did not explicitly address this issue in his decision, he may have implicitly concluded that Walker's fibromyalgia did not satisfy the durational requirement for severe impairments after reviewing Dr. Cuesta's RFC assessment that the condition had not lasted, nor could be expected to last, for more than 12 months. *See Frederica v. Comm'r of Soc. Sec.*, No. 12-14121, 2014 U.S. Dist. LEXIS 26097, at *18 (E.D. Mich. Feb. 10, 2014) (citing 20 C.F.R. § 404.1509) (addressing the durational requirement for severe impairments). For the purposes of finality, the Court suggests that the ALJ consider whether the fibromyalgia condition is a Step Two severe impairment and then proceed with his sequential analysis accordingly.

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 31, 2014.

              s/Eddrey O. Butts
              EDDREY O. BUTTS
              Case Manager